```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
THEOPHILUS MARANGA,                                         :
                                                            :
                            Plaintiff,                      :    11 Civ. 09397 (CM)
                                                            :
            -against-                                       :
                                                            :
UMAR FAROUK ABDULMUTALLAB,                                  :
DELTA AIRLINES, INC., and                                   :
KLM ROYAL DUTCH AIRLINES,                                   :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------X
```

# DECISION AND ORDER GRANTING DEFENDANT KLM'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

McMahon, J.:

## INTRODUCTION

Theophilus Maranga ("Plaintiff") commenced this action against Umar Farouk Abdulmutallab ("Abdulmutallab"), Delta Airlines, Inc. ("Delta"), and KLM Royal Dutch Airlines ("KLM") for injuries he sustained while helping to subdue a terrorist threat aboard a Northwest Airlines flight from Amsterdam to Detroit. Abdulmutallab has since been convicted for the attempted use of a weapon of mass destruction and the attempted murder of 289 people. (Am. Compl. ¶ 17.) He is currently serving a life sentence at the Florence Admax Penitentiary in Florence, Colorado. (*Id.* ¶¶ 2, 17.)

Defendant KLM now moves, pursuant to Federal Rule 12(b)(1), to dismiss Plaintiff's complaint in its entirety, as against KLM, for lack of subject matter jurisdiction. Defendant KLM

1

argues that Plaintiff's claim must be raised pursuant to the Warsaw Convention, and that in this case, the Convention does not confer jurisdiction upon the United States. For the reasons set forth below, Defendant KLM's motion to dismiss is granted.

Because it is manifest that this court lacks personal jurisdiction over Abdulmutallab, the Court *sua sponte* dismisses the complaint as against him without prejudice.

## BACKGROUND

### Statement of Facts

On December 25, 2009, Plaintiff, a lawful permanent resident of the United States, boarded Northwest Airlines Corp. ("Northwest") Flight 253 ("Flight 253") going from Amsterdam to Detroit. (*Id.* ¶¶ 1, 11.) Also aboard this flight was Abdulmutallab. (*Id.* ¶ 12.)

As Flight 253 passed through Canadian airspace, Abdulmutallab detonated a concealed explosive device, intending to destroy the aircraft and kill its passengers. He succeeded only in igniting his own leg. (*Id.* ¶¶ 13-14.)

Plaintiff was among several courageous passengers who subdued Abdulmutallab and attempted to put out the fire before a flight attendant deployed a fire extinguisher. (*Id.* ¶ 13.)

Plaintiff sustained several injuries during the fracas, including a broken tooth, injuries to the ribs, permanent numbness in his right hand, and ongoing neck pain. He also claims to experience ongoing emotional pain and suffering from the incident, including heightened fears of flying and death. (*Id.* ¶¶ 15-16.)

Plaintiff purchased his ticket for Flight 253 two days prior to departure at a KLM office in Accra, Ghana. (*Id.* ¶ 10.) Through a commercial agreement between KLM and Northwest, Plaintiff secured a round trip from Accra to New York, with stopovers en route in Amsterdam and Detroit, via a combination of flights operated by Northwest and KLM. (*Id.* ¶ 10.)

2

Abdulmutallab arrived in Amsterdam via KLM Flight 588 from Lagos, Nigeria. (*Id.* ¶ 12.) He purchased tickets for both flights from the same KLM office in Accra where Plaintiff had bought his tickets. (*Id.*)

### Plaintiff's Claims

Plaintiff asserts that KLM and its agents recklessly and negligently allowed Abdulmutallab to buy these tickets and board the flights. Plaintiff alleges that, in Abdulmutallab's dealings with KLM agents, he had insisted on booking a seat above the airplane's fuselage,[1] and that he rejected several flights in which such seats were unavailable. (*Id.* ¶¶ 18, 20.) Abdulmutallab indicated that he was willing to change his points of departure and arrival in order to secure a suitably located seat. (*Id.* ¶¶ 18-19.) He also paid in cash and flew to Detroit in the middle of winter without luggage or warm clothing. (*Id.* ¶¶ 20-21.)

Plaintiff now seeks compensation for mental and physical damages from Abdulmutallab, Northwest, and KLM. This Court has original jurisdiction under 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases arising under the treaties of the United States. Plaintiff believes the applicable treaty to be the Convention for Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (the "Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

### Procedural History

Plaintiff commenced this action on December 21, 2011, naming Abdulmatallab, Delta, and Air France-KLM ("AF-KLM") as Defendants. Delta acquired Northwest in October of 2008

---

[1] I assume the Plaintiff means "fuel tank," not "fuselage," as sitting above the latter would entail being on the exterior of the plane.

and completed its merger in January 2010, making the airline successor-in-interest to Northwest. AF-KLM is a French holding company of which Defendant KLM is a subsidiary.

AF-KLM promptly moved to dismiss Plaintiff's Complaint on the grounds that, *inter alia*, AF-KLM was not a proper party to the litigation. On November 7, 2012, Plaintiff's claims against AF-KLM were dismissed without prejudice, and Plaintiff was granted leave to amend his Complaint.

Plaintiff filed an Amended Complaint on November 16, 2012, this time naming Abdulmutallab, Delta, and KLM as defendants. Defendant KLM filed an Answer on December 20, 2012 and then a Motion to Sever and Dismiss the Amended Complaint on January 22, 2013.

## DISCUSSION

### 1. Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). In considering a motion to dismiss for lack of subject matter jurisdiction, the court must assume the truth of the complaint's factual allegations. *See Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998). However, when resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (internal citations omitted). Plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Luckett v. Bure,* 290 F.3d 493, 496-97 (2d Cir. 2002). The court should consider a 12(b)(1) motion before ruling on any other motions to dismiss, as dismissal of an action for lack of subject matter jurisdiction will render all defenses and motions moot. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990).

### 2. The Warsaw Convention, not the Montreal Convention, is the Governing Law

Plaintiff argues that the Montreal Convention governs this litigation, and that under Articles 17 and 45 of that Convention, Delta (as successor-in-interest to Northwest, the actual carrier) and KLM (as the contracting carrier) are jointly and severally liable for Plaintiff's injuries. (Am. Compl. ¶¶ 24, 27.) Plaintiff argues further that under Article 21 of the Montreal Convention, these Defendants are strictly liable for all of Plaintiff's damages up to "113,100 Special Drawing Rights"[2] (approximately $175,367) and for any damages beyond that caused by the Defendants' negligence. (*Id.* ¶ 25.)

KLM responds that the Montreal Convention does not apply because Plaintiff's transportation originated and terminated in Ghana, which is not a "State Party" to the Convention. (Def.'s Mem. of Law in Opp., 6-7.) It argues that Plaintiff's claims against it are governed by the Warsaw Covention. I agree with KLM.

The Montreal Convention applies where (1) the litigation involves the international carriage of persons by aircraft and (2) the places of departure and final destination are both State Parties to the Convention. Montreal Convention, Arts. 1(1), (2). The Convention also applies to travel "within the territory of a single State Party if there is an agreed stopping place within the territory of another state, even if that state is not a State Party." *Id.*, Art. 1(2). Thus, the Convention applies to roundtrip international travel only where the place of departure, which is also the place of final destination, is a State Party. *See Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp. 2d 591, 595 (S.D.N.Y. 2007) ("[I]t is well established that 'the place of final destination

---

[2] "[A Special Drawing Right] is an artificial currency, the exchange rate for which is published daily by the International Monetary Fund. The value of an SDR fluctuates based on the global currency market, and, under the Montreal Treaty, Art. 23, is determined 'at the date of the judgment.'" *Shah v. Kuwait Airways Corp.*, 653 F. Supp. 2d 499, 504 n. 3 (S.D.N.Y. 2009) *vacated and remanded on other grounds*, 387 F. App'x 13 (2d Cir. 2010)

. . . is the return city appearing on a round-trip ticket.") (quoting *Klos v. Polskie Linie Lotnicze*, 113 F.3d 164, 167 (2d Cir. 1997)).

It is settled law in this Circuit that a "State only becomes bound by - that is, becomes a party to - a treaty when it ratifies the treaty." *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 256 (2d Cir. 2003) ("[A] State's *signing* of a treaty serves only to authenticate its text; it does not establish the signatory's consent to be bound." (Quotations omitted)); *see also, Ozaltin v. Ozaltin*, No. 12-2371, 2013 WL 490834, at *1 n.4 (2d Cir. Feb. 11, 2013) (holding that the United States only became party to the Hague Convention after it ratified the treaty). In *Avero Belgium Ins. v. Am. Airlines, Inc*, 423 F.3d 72, 80 (2d Cir. 2005), the Second Circuit specifically held that the United States did not become a party to an amendment to the Warsaw Convention – in that case, The Hague Protocol of 1955 – until the amendment was independently ratified and thereby entered into force. This understanding of the law is codified in the Montreal Convention itself, which provides that "[t]his Convention shall be subject to ratification by States." Montreal Convention, Art. 53(3).

Although Ghana became a signatory to the Montreal Convention on May 28, 1999, it has not, to date, ratified the agreement. Thus, the International Civil Aviation Organization ("ICAO"), as the designated depositary of instruments of ratification (*see* Montreal Convention, Art. 53(5)), does not list Ghana as one of the States that has entered the Montreal Convention into force. The U.S. State Department also shares this view. (*See* Def.'s Mem. of Law in Opp., Exs. D and E.)³

---

³ On a motion to dismiss, the Court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). The ICAO and State Department documents are neither attached to nor incorporated by reference in the Amended Complaint. They are, however, publicly accessible at the ICAO's and State Deparment's respective websites, and thus the Court may take judicial

Because Ghana – the Plaintiff's place of departure and final destination – is not a "State Party" to the Montreal Convention, Plaintiff has no recourse under the Convention.

KLM correctly asserts that, if the Montreal Convention does not apply, the "Warsaw Convention,"[4] to which Ghana *is* a State Party, applies in its stead. Under the Warsaw Convention, KLM is subject to strict liability for any bodily injury suffered by Plaintiff (*see* Warsaw Convention, Art. 17), up to 250,000 francs. *See id.*, Art. 22(1). To the extent that Plaintiff's injuries were caused or contributed to by Plaintiff's own negligence, KLM may only be held liable on a contributory basis. *See id.*, Art. 21(1).

### 3. This Court Lacks Jurisdiction Under the Warsaw Convention

The court must next consider whether Plaintiff's claims under the Warsaw Convention may be properly asserted in this forum. They may not. KLM correctly asserts – and Plaintiff does not dispute – that this Court lacks jurisdiction under the Convention.

The forum-limiting provision of the Convention provides:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

Warsaw Convention, Art. 28(1).

Pursuant to the Convention, the Plaintiff could bring its claims against KLM: (1) where KLM is domiciled; (2) where KLM has it principal place of business; (3) where the transportation contract was made; or (4) Plaintiff's place of destination. *See id.*, Art. 28(1). If the

---

notice of them on a motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 210 n. 10 (S.D.N.Y. 2004).

[4] The Warsaw Convention's full title is the Convention for the Unification of Certain Rules for Transportation by Air, signed at Warsaw on October 12, 1929, 49 Stat. 3000, T.S. No 876 (1934), as amended by the Hague Protocol, 1955, and Montreal Protocol no. 4, done at Montreal, September 25, 1975.

United States is not one of these four locations, this Court lacks treaty jurisdiction over the matter. *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 167 (2d Cir.1997); *Campbell v. Air Jamaica, Ltd.*, 863 F.2d 1, 1 (2d Cir.1988); *Smith v. Canadian Pac. Airways, Ltd.*, 452 F.2d 798, 802 (2d Cir.1971); *Adjoyi v. Federal Air (PTY) Ltd.*, 137 F. Supp. 2d 498, 501 (S.D.N.Y. 2001); *cf. Swaminathan v. Swiss Air Transp. Co., Ltd.*, 962 F.2d 387, 390 (5th Cir.1992).

### a. KLM is Domiciled in The Netherlands

An air carrier's sole domicile for purposes of Article 28(1) is it place of incorporation. *See Wyler v. Korean Air Lines Co., Ltd.*, 928 F.2d 1167, 1175 (D.C.Cir.1991); *Smith*, 452 F.2d at 802; *Shen v. Japan Airlines*, 918 F.Supp. 686 at 689 (S.D.N.Y. 1994); *Pflug v. Egyptair Corp.*, 788 F.Supp. 698, 700 (E.D.N.Y.1991); *In re Air Disaster Near Cove Neck, N.Y., on Jan. 25, 1990*, 774 F. Supp. 718, 720 (E.D.N.Y. 1991); *Stanford v. Kuwait Airways Corp.*, 648 F.Supp. 657, 661 (S.D.N.Y.1986).

KLM is incorporated in the Kingdom of the Netherlands (Am. Compl. ¶4; Def.'s Mem. of Law in Opp., 8-9.); thus that is its domicile. *See also Recumar Inc. v. KLM Royal Dutch Airlines*, 608 F. Supp. 795, 798 (S.D.N.Y. 1985).

### b. KLM's Principal Place of Business is the Netherlands

Under Article 28 of the Convention, "there can be only one principal place of business for an air carrier." *Swaminathan*, 962 F.2d at 390. A carrier's principal place of business is where the carrier's corporate and operational headquarters are. *See Shen*, 918 F. Supp. at 689; *Stanford*, 648 F.Supp. at 661.

KLM is incorporated under the laws of the Kingdom of the Netherlands, and its corporate and operational headquarters are also located there. (Am. Compl. ¶ 4; Def.'s Mem. of Law in Opp., 9.) Accordingly, KLM's principal place of business is the Netherlands.

### c. Plaintiff's Transportation Contract was Made in Ghana

For the purposes of Article 28(1), the "place of business through which the contract has been made" is where the Plaintiff's air tickets were purchased or issued. *See Campbell*, 863 F.2d at 2; *Smith,* 452 F.2d at 802; *Lam v. Aeroflot Russian Int'l Airlines*, 999 F.Supp. 728, 732 (S.D.N.Y. 1998); *Stanford,* 648 F.Supp. at 661.

Plaintiff purchased his tickets at a KLM office in Accra, Ghana on December 23, 2009. (Am. Compl. ¶ 10; Def.'s Mem. of Law in Opp., 10.) Accordingly, Ghana is the "place of business" under Article 28(1).

### d. Plaintiff's Final Destination was Ghana

For the "purposes of the Warsaw Convention, the 'destination' of a round-trip journey is the same as the starting point," even if the flight includes stops en route. *Petrire v. Spantax, S.A.,* 756 F.2d 263, 265 (2d Cir. 1985), *cert. denied; see also Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983).

Plaintiff's flight plan originated and terminated in Accra, Ghana, with stops in Amsterdam, Detroit, and New York. (Am. Compl. ¶ 10; Def.'s Mem. of Law in Opp., 10-11.) Therefore Plaintiff's destination was Accra.

\*       \*       \*

In sum, under Article 28(1) of the Warsaw Convention, Plaintiff's claims against KLM may only properly be asserted in the Netherlands (the domicile and principal place of business of KLM) or Ghana (where the tickets were purchased, and Plaintiff's final destination). Since the

Convention does not confer jurisdiction on the United States, this Court lacks jurisdiction to enforce it.

## CONCLUSION

For the reasons set forth above, KLM's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction is GRANTED. KLM is dismissed from this action with prejudice.

The Clerk of the Court is directed to remove the motion at Docket No. 42 from the Court's list of pending motions.

Dated: June 3, 2013

U.S.D.J.

BY ECF TO ALL COUNSEL